UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 14-cv-80675-DIMITROULEAS/SNOW

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
            Plaintiff,                )
                                      )
     v.                               )
                                      )
JEFFREY M. BERKOWITZ,                 )
                                      )
            Defendant.                )
_____)

**PLAINTIFF'S MOTION FOR FINAL JUDGMENT
SETTING CIVIL PENALTY AMOUNT**

Plaintiff Securities and Exchange Commission, pursuant to this Court's Order and Default Judgment of Permanent Injunction and Other Relief entered on July 15, 2014 [DE 11], moves the Court for entry of a Final Judgment finding Defendant Jeffrey M. Berkowitz liable for a civil penalty in the amount of $7,500.[1] This relief is appropriate because Berkowitz perpetrated the fraudulent scheme at issue in this case, and it is necessary to punish him for his involvement in the scheme and to properly deter future violations of the securities laws.[2]

**I.   FACTUAL AND PROCEDURAL HISTORY**

   **A.   The Procedural History of the Case**

The Commission filed its Complaint in this matter on May 22, 2014 [DE 1]. The Complaint alleges, among other things, that Berkowitz violated Section 10(b) and Rules 10b-5(a) and (c) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and

---

[1]   The Court gave the Commission a period of 90 days within which to file this motion following Berkowitz's sentencing in a parallel criminal proceeding, *USA v. Berkowitz*, Case No. 14-20342-CR-SCOLA/VALLE (S.D. Fla. May 15, 2014). Berkowitz was sentenced on October 27, 2014. This motion therefore is timely.

[2]   The attached proposed Final Judgment includes a provision dismissing the Commission's claims for disgorgement and prejudgment interest against Berkowitz. Accordingly, upon entry of the proposed Final Judgment, all outstanding issues in this case against Berkowitz will be resolved.

17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c). The Complaint seeks in pertinent part: (i) injunctive relief; (ii) disgorgement and prejudgment interest; (iii) a civil money penalty; and (iv) a penny stock bar.

On July 15, 2014, the Court granted the Commission's motion for default judgment, and entered a Default Judgment of Permanent Injunction and Other Relief against Berkowitz [DE 11]. As part of the Default Judgment, the Court permanently restrained and enjoined Berkowitz from the violations set forth above, and also barred him from participating in an offering of penny stock. The Default Judgment also provided, in pertinent part:

> IT IS FURTHER ORDERED AND ADJUDGED that ***Berkowitz shall pay disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty*** pursuant to Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3). The Court shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission, which motion shall be filed within 90 days after Berkowitz is sentenced in the parallel criminal proceeding, *USA v. Berkowitz*, Case No. 14-20342-CR-SCOLA/VALLE (S.D. Fla. May 15, 2014). Prejudgment interest shall be calculated from February 8, 2013, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2). In connection with the Commission's motion for disgorgement and/or civil penalty, and at any hearing held on such a motion: (a) Berkowitz will be precluded from arguing he did not violate the federal securities laws as alleged in the Complaint; (b) Berkowitz may not challenge the validity of this Judgment; (c) ***solely for the purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true by the Court***; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure. In connection with the Commission's motion for disgorgement and/or civil penalty, the parties may take discovery, including discovery from appropriate non-parties.

[DE 11 at § III] (emphasis added).  Accordingly, it is undisputed that Berkowitz shall pay a civil money penalty in this case, and the Court should deem the allegations in the Complaint true for purposes of this motion.

>   **B.      Allegations of the Complaint Deemed True**

>>   **1.      The Parties**

During the relevant time period, Berkowitz worked as a stock promoter for Face Up Entertainment Group, Inc. ("FUEG") and resided in Jupiter, Florida.  (Complaint, ¶ 6.)  FUEG was a Florida corporation with principal offices located in Valley Stream, New York during the relevant time period, and purported to be in the business of operating an internet gaming website that charged a monthly membership fee.  (*Id*. ¶ 7.)

FUEG's stock is a "penny stock" as defined by the Exchange Act. (*Id*. ¶ 8.)  During the relevant time period, the stock's shares traded at less than 43 cents per share. (*Id*.)  During the same time period, the stock did not meet any of the exceptions to penny stock classification pursuant to Section 3(a)(51) and Rule 3a51-1 of the Exchange Act. (*Id*.)   For example: (a) the stock did not trade on a national securities exchange; (b) it was not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47); (c) FUEG did not have net tangible assets (*i.e.*, total assets less intangible assets and liabilities) in excess of $5,000,000; and (d) did not have average revenue of approximately $6,000,000 for the last three years. (*Id*.)  *See* Exchange Act, Rule 3a51-1(g).

>>   **2.      The Fraudulent Scheme**

In December 2012, Berkowitz, along with his business associate, Lance T. Berger, another stock promoter for the company, began discussions with the cooperating witness regarding possible fraudulent stock transactions involving FUEG. (*Id*. ¶ 12.)  Following a face-to-face meeting on December 7, 2012, the three continued to communicate through a series of telephone conversations and emails over the next two months. (*Id*. ¶ 13.)  During these

conversations, they agreed Berkowitz would make a $10,000 inducement payment to Berger and the cooperating witness to participate in the manipulation of FUEG stock. (*Id*.)  Berkowitz would pay the money directly to Berger who would then forward $5,000 to the cooperating witness. (*Id*.)

As part of the scheme, and in exchange for the inducement payment, the cooperating witness would purchase shares of FUEG stock on the open market in order to increase the stock's trading volume. (*Id*. ¶ 14.)  Berger would arrange email blasts and provide "bid support" by lining up the cooperating witness, and others, to engage in purchases of FUEG stock. (*Id*.)  Berger also agreed to provide the cooperating witness with advance notice of press releases Berger would arrange for FUEG to issue, in order to coordinate with the fraudulent trading. (*Id*.)  The press releases would be timed so it would appear the buying activity was spurred by positive news about the company. (*Id*.)

### 3. The Stock Transaction and Kickback

On February 5, 2013, Berger told the cooperating witness Berkowitz had sent Berger the $10,000 payment. (*Id*. ¶ 15.)  Berger agreed to deposit the cooperating witness's share of the money directly into the cooperating witness' bank account. (*Id*.) During this conversation, Berger also told the cooperating witness he had received an advance press release and FUEG was going to be announcing "beta testing" with Facebook. (*Id*.)

The following day, on February 6, 2013, Berger deposited $5,000 into the cooperating witness' bank account.  (*Id*. ¶ 16.)  That same day, during a telephone call with the cooperating witness, Berger confirmed he had an advance copy of the press release FUEG would be issuing the following day and told the cooperating witness to start buying FUEG stock as soon as the release came out. (*Id*.)  Shortly after this conversation, the cooperating witness called Berkowitz

to ensure Berkowitz concurred with Berger's instructions. (*Id*.) Berkowitz told the cooperating witness he agreed with whatever Berger instructed the cooperating witness to do. (*Id*.)

On February 8, 2013, at the precise time Berger had confirmed to the cooperating witness, FUEG released a press release announcing it had begun "[c]losed Beta testing of its Facebook integrated gaming software." (*Id*. ¶ 18.) That same day, the FBI, posing as the cooperating witness, purchased a total of 35,000 shares of FUEG on the open market, in three separate transactions, at prices ranging from 20 to 21.5 cents per share, for a total cost of approximately $7,350. (*Id*. ¶ 19.) The cooperating witness told Berger he had purchased the shares as agreed. (*Id*.)

Although the parties previously had discussed the possibility of a second round of manipulative buying, ultimately there were no further transactions. (*Id*. ¶ 20.)

## II.  MEMORANDUM OF LAW

The Commission seeks a civil money penalty against Berkowitz in the amount of $7,500 pursuant to Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3). This statute establishes a three-tier system of penalties.[3]

Under the first tier, the Court may impose a penalty of up to the greater of: (i) $7,500 for a natural person or $75,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. Under the Second Tier, the Court may impose a penalty of up to the greater of: (i) $75,000 for a natural person or $375,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. The second tier applies where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement. Finally, under the third tier the Court may impose

---

[3] Under the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, the tier amounts were adjusted to account for inflation, based on violation dates occurring on or after March 3, 2009. *See* 17 C.F.R. § 201.1004, Tbl. IV to Subpt. E.

a penalty of up to the greater of: (i) $150,000 on a natural person or $725,000 on an entity for each violation; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. *SEC v. KS Advisors*, *Inc.*, No. 04-cv-105, 2006 WL 288227 at *3 (M.D. Fla. Feb. 6, 2006). The third tier applies to cases in which the requirements of a second tier penalty are present *and* the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons. *Meadows v. SEC*, 119 F.3d 1219, 1228 (5th Cir. 1997). Because of the circumstances in this case, the Court should impose a first-tier civil penalty in the amount of $7,500.

Civil penalties are designed to punish the violator and deter future violations of the securities laws. *SEC v. Moran*, 944 F. Supp. 286, 296 (S.D.N.Y. 1996). In determining whether to impose civil penalties and the amount of the fine, courts look to a number of factors, including: (i) the egregiousness of the conduct; (ii) the degree of the defendant's scienter; (iii) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (iv) whether the defendant's conduct was isolated or recurrent; and (v) whether the penalty should be reduced due to the defendant's current and future financial condition. *SEC v. U.S. Pension Trust Corp.*, 2010 WL 3894082 at *25 (S.D. Fla. Sept. 30, 2010), *aff'd*, 444 F. App'x 435 (11th Cir. 2011) (citing *SEC v. Opulentica, LLC,* 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007)). While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a "discretionary nature" and each case "has its own particular facts and circumstances which determine the appropriate penalty to be imposed." *Moran*, 944 F. Supp. at 296-97.

In this case, Berkowitz's actions merit a $7,500 first-tier penalty. **First**, his misconduct was egregious. He knowingly participated in a fraudulent scheme in which he agreed to make a $10,000 inducement payment to Berger and the cooperating witness to manipulate FUEG stock.

(Complaint, ¶ 13.) Berkowitz paid the money directly to Berger who then forwarded half of it to the cooperating witness. (*Id.*) In exchange for the inducement payment, the cooperating witness would purchase shares of FUEG stock on the open market in order to increase the stock's trading volume. (*Id.* ¶ 14.) Berger would arrange email blasts and provide "bid support" by lining up the cooperating witness, and others, to make the stock purchases, and arrange for FUEG to issue press releases in coordination with the fraudulent trading. (*Id.*)

*Second*, Berkowitz's actions reflect a high level of scienter. The purpose of the scheme was to falsely generate the appearance of market interest in FUEG, induce public purchases of the stock, and artificially increase the stock's trading price and volume. (*Id.* ¶ 2.) Berkowitz knowingly consummated the scheme by making the inducement payment and instructing the cooperating witness to begin purchasing the stock as soon as the press release Berger arranged to issue became public. (*Id.* ¶ 16.)

*Third*, Berkowitz's actions were recurrent. Indeed, the parties had discussed a second round of manipulative buying and had planned for subsequent coordination of press releases and inducement payments. (*Id.* ¶ 20.)

*Lastly*, the remaining two factors (substantial losses or the risk of substantial losses to other persons, and Berkowitz's current and future financial condition) are not at issue in this case, and explain why the Commission has not sought a larger civil penalty. First, there were no substantial losses to FUEG's investors as a result of the scheme. As noted above, however, substantial losses are required only for a third-tier penalty. For a first-tier penalty, the Commission need only show the defendant violated the Exchange Act, *see* 15 U.S.C. § 78u(d)(3), which the Court already has determined in granting the Commission's motion for default judgment [DE 11]. Finally, with respect to the financial condition factor, the Commission notes that Berkowitz took no action to defend this case or present any evidence as

to his current or future financial condition.[4]  Accordingly, the Court need not take that factor into account when assessing the Commission's requested penalty amount.  The Commission submits that a first-tier penalty in the amount of $7,500 will appropriately punish Berkowitz for his unlawful activities and deter others from engaging in violations of the federal securities laws.

### III.     CONCLUSION

For the foregoing reasons, the Commission respectfully requests the Court grant the Commission's motion and enter final judgment setting the above-described civil penalty amount against Berkowitz.  A proposed order and final judgment is attached for the Court's convenience.


Dated: January 8, 2015                              Respectfully submitted,


By:     /s/ Patrick R. Costello
        Patrick R. Costello
        Senior Trial Counsel
        Florida Bar No. 75034
        Direct Dial:  (305) 982-6380
        E-mail: CostelloP@sec.gov
        *Lead Attorney*

        Michelle I. Bougdanos
        Senior Counsel
        Florida Bar No. 20731
        Telephone: (305) 982-6307
        E-mail : BougdanosM@sec.gov

        **ATTORNEYS FOR PLAINTIFF**
        **SECURITIES AND EXCHANGE COMMISSION**
        801 Brickell Avenue, Suite 1800
        Miami, Florida 33131
        Telephone: (305) 982-6300
        Facsimile: (305) 536-4154

---

[4]     Even if Berkowitz had done so, inability to pay is only one factor to be considered in imposing a penalty.  *See SEC v. Warren* 534 F.3d 1368, 1370 (11th Cir. 2008).

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 8, 2015, the above document was filed electronically using CM/ECF. I also certify that the above document is being served this day on all counsel of record or *pro se* parties identified on the Service List below, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of record or *pro se* parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Patrick R. Costello
Patrick R. Costello

**SERVICE LIST**

*Securities and Exchange Commission v. Berkowitz*
Case No. 14-cv-80675-DIMITROULEAS/SNOW
United States District Court, Southern District of Florida

Jeffrey M. Berkowitz
11604 150th Court North
Jupiter, FL 33478

*Pro se*

**Via First-Class Mail**